UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Civil No. 01-CV-1503 (JEL/JGL)

Scott A. Linville,

Plaintiff,

v.

ORDER

Sears, Roebuck and Co., a foreign corporation, and Kent Farnham,

Defendants.

---

Donald Nichols, Esq., appeared for Plaintiff Scott A. Linville.

Andrew Voss, Esq., and Heather Sherman, Esq., appeared for Defendant Sears, Roebuck and Co.

Michael Chase, Esq., appeared for Defendant Kent Farnham.

---

THIS MATTER came before the undersigned Judge of the District Court on July 11, 2002, for a hearing on Defendant Sears, Roebuck and Co.'s Motion for Summary Judgment. The parties stipulated to the dismissal with prejudice of Counts Three and Four of the Complaint. For the reasons detailed below, the Court orders that Defendant's Motion for Summary Judgment be granted.

1. Background

Plaintiff, Scott Linville ("Linville"), began working as a tool expert for Defendant, Sears, Roebuck and Co. ("Sears"), in June 2000. Defendant, Kent Farnham ("Farnham"), worked with Linville on the sales floor of the tool department. Linville and Farnham are both heterosexual males, working in a predominantly male environment. Linville alleges that he suffered sexual discrimination violating Title VII, which discrimination has at its core Linville's allegation that Farnham struck him in the groin on several occasions.

The first such incident occurred on February 5, 2001. Linville stood on a ladder as he placed merchandise on the store shelves. Farnham, who was a friend and frequent lunch companion of Linville's, was assisting him. When Linville finished, Farnham backhanded him in the groin,



SEP 0 4 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTERED SEP 0 4 2002
DEPUTY CLERK'S INITIALS

causing Linville to fall from the ladder. Farnham and some of the other employees in the area laughed at Linville's reaction. Linville told Farnham not to hit him again. He then reported the incident to his supervisor, John Owens ("Owens"). Owens asked Linville if he should speak to Farnham about the matter; Linville said that Owens did not need to take any action, because he had already told Farnham not to hit him again. Later that day, Linville again told Farnham not to hit him.

On or about February 19, 2001, Farnham struck Linville in the groin a second time. As Farnham walked past Linville, he backhanded Linville in the groin. Linville reported the incident to Owens. Linville left work early and visited a doctor, complaining of pain in his groin. The doctor noted an injury to Linville's left testicle.

On or about March 12, 2001, Linville was struck for a third time. He was standing with Farnham near some lawn mowers. When Farnham left, he backhanded Linville in the groin. Linville fell to his knees and was unable to move. Again, he told Farnham not to hit him. Linville did not know why Farnham struck him. Linville contacted Sears "Ethics Line" to discuss Farnham's behavior. He was told that he should address his concerns to his immediate supervisor. Linville reported the incident to Owens and left work early to visit a doctor. Linville missed work the following day and did not return to work until the 15th of March.

When Linville returned on the 15th, Farnham attempted to hit him again. Farnham was cleaning an area near the power drills and Linville said something to him about his work. Farnham took the towel he had been using to clean the area and snapped it at Linville, striking him on the inner part of his thigh. Linville, who was not injured during this incident, turned and walked away. Linville reported Farnham's actions to Owens. In his deposition, Linville testified that he did not know why Farnham tried to hit him. However, because Farnham attempted to hit him in the groin, Linville believed that Farnham intended to hurt him. Linville also testified that he thought Farnham's actions were sexual because he laughed after he hit Linville.

Owens spoke to Farnham about his behavior when an investigation of Farnham's actions

was conducted. Linville returned to work on March 20, 2001. Linville was informed that the investigation revealed insufficient evidence to substantiate his claims. He was told that either he would have to continue working with Farnham or he would have to resign. On March 26, 2001, Farnham approached Linville, told him he was sorry, and offered him a piece of candy. Later that day, Linville resigned. His letter of resignation stated: "I am resigning from Sears because I was physical [sic] sexually assaulted @ Sears and cannot work with the associate Kent Farnham with his weird behavior."

Linville did not experience any problems with any of his other coworkers and never observed Farnham hit any other coworkers in the groin. He does not allege that Linville made any suggestive, sexual, or offensive comments to him.

2. Legal Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the case may be decided on purely legal grounds. Fed. R. Civ. P. 56(c); *Agristor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). To be considered material, any disputed facts must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the initial responsibility of demonstrating that there is no genuine issue of material fact to be decided. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once a motion for summary judgment has been made and supported by the pleadings and affidavits as provided in Rule 56(c), the burden shifts to the party opposing the motion to proffer evidence demonstrating that a trial is required because a disputed issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In satisfying this burden, however, the non-moving party must do more than simply establish doubt as to material facts. The party opposing summary judgment may not "rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 586, n.11; *see also Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995); Fed. R. Civ. P. 56(e).

Thus, the moving party is entitled to summary judgment where the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial. *Celotex*, 477 U.S. at 323. When there can be no reasonable construction of the facts that would allow the non-moving party to prevail, the remedy of summary judgment is appropriate. *Matsushita*, 475 U.S. at 586-87. Summary judgment is not appropriate, however, where there are genuine factual issues that "properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Liberty Lobby*, 477 U.S. at 250.

3. Sexual Harassment Under Title VII

Title VII is violated when workplace harassment based on sex creates a hostile work environment. *Meritor Sav. Bank v. Vinson*, 477 U.S. 57 (1986). To establish a claim for hostile work environment, a plaintiff must establish that: (1) he belongs to a protected group; (2) he was subject to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment but failed to take proper remedial action. *Scusa v. Nestle U.S.A. Co., Inc.*, 181 F.3d 958 (8th Cir. 1999). Viewing the evidence in the light most favorable to Linville, the non-moving party, the Court concludes that his cause of action fails as a matter of law because he has not raised a genuine issue of material fact with respect to the third element of his sexual harassment claim. Accordingly, summary judgment is appropriate. *Celotex*, 477 U.S. at 323.

As stated above, an essential element in a sexual harassment claim is whether the harassment is "based on sex." "The concept of sexual harassment is designed to protect working women from the kind of male attentions that can make the workplace hellish for women." *Hathaway v. Runyon*, 132 F.3d 1214, 1223 (8th Cir. 1997) (*quoting Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430 (7th Cir. 1995)). It is now established law that men as well as women can sue for sexual harassment under Title VII, and that a man's suit can be based on conduct by another man. Notwithstanding the emerging recognition of male on male harassment, a plaintiff in a Title

VII sexual harassment case still must prove that the harassing conduct actually constituted discrimination because of sex. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998). In *Oncale*, the Supreme Court suggested three methods of proving same-sex sexual harassment. A plaintiff could present credible evidence that the harasser was homosexual, leading to the inference that the harassing behavior was based on sexual desire. *Id.* at 80. Secondly, a plaintiff could show that he is harassed in such sex-specific and derogatory terms as to make it clear that the harasser is motivated by general hostility toward the presence of males in the workplace. *Id.* Finally, a plaintiff may offer direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace. *Id.* at 80-81. The District of Columbia Circuit Court of Appeals, applying *Oncale* to determine whether a Plaintiff in a same-sex sexual harassment has presented sufficient evidence to avoid summary judgment, observed that the "based on sex" element presents a plaintiff with serious obstacles when the perpetrators and plaintiff are of the same sex. *See Davis v. Coastal Int'l Sec., Inc.*, 275 F.3d 1119 (D.C. Cir. 2002).

The *Oncale* approach is consistent with the Eighth Circuit's analysis two years earlier in *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372 (8th Cir. 1996). *Quick* involved a factory setting in which the male employees would often grab, or motion as if to grab, the groin of other male employees. *Id.* at 1374. The Plaintiff in *Quick* had been subjected to this treatment approximately 100 times in the course of two years. *Id.* The record in *Quick* reflected that derogatory verbal remarks of a sexual nature accompanied the violent behavior. *Id.* at 1375. The record also contained evidence that other male employees were subjected to harassing behavior. *Id.* In contrast, there was only one incident in the record involving a female employee. *Id.* at 1379. The Eighth Circuit concluded, for purposes of summary judgment, that the Plaintiff raised a genuine issue of material fact for trial because a fact finder could reasonably have concluded that the treatment of male employees at the factory was worse than the treatment of female employees. *Id.*

The Eighth Circuit's analysis of the "based on sex" element of a Title VII claim in *Quick* is consistent with the second and third approach methods of proof discussed in *Oncale* and *Davis*.

*Oncale* suggested that same-sex sexual harassment could be proven by such sex-specific and derogatory terms as to make it clear that the harasser is motivated by general hostility toward the presence of males in the workplace. In *Quick*, the physical abuse directed toward male employees was often accompanied by derogatory sexual remarks. Secondly, *Oncale* suggested that same-sex sexual harassment could be proven by direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace. In *Quick*, there was evidence of widespread abusive behavior directed almost exclusively toward male employees. Linville urges this Court to find that his situation is similar to that in *Quick* and to allow his suit to go forward.

Like *Quick*, the instant case involves abusive male-on-male co-worker behavior. Both cases involve allegations that the employee's groin was interfered with; in *Quick*, though, the contact was typically lewd grabbing (called "bagging" and described in the Eighth Circuit opinion), whereas Linville endured hittings or towel-snaps that did not linger, but were assaultive. Unlike in *Quick*, there is no allegation here that Farnham made any derogatory sexual remarks toward Linville. In addition, unlike *Quick*, where harassing behavior was directed at many male employees, Farnham was the only individual to engage in harassing behavior and Linville was his only target. Farnham may have been motivated by an excessively juvenile or cruel sense of humor, or gone overboard with "horse-play" with a friend; the record provides no basis for insight as to his motivation. If it were possible from this record to draw a reasonable inference of discrimination based on sex, the Court would do so, but the record does not support such an inference.

Summary judgment is appropriate because Linville has failed to raise a genuine issue of material fact as to whether Farnham's conduct was "based on sex." Linville has not offered evidence with respect to any of the three methods of proof described in *Oncale*. Linville stated that he does not think Farnham is a homosexual and there is no credible evidence to support an inference that Farnham's behavior resulted from sexual desire. Secondly, Linville has not shown that he was harassed in such sex-specific and derogatory terms as to make it clear that Farnham was motivated by general hostility toward the presence of males in the workplace. Finally, Linville has not offered

direct comparative evidence about how Farnham treated members of both sexes in a mixed-sex workplace so as to support a finding that his harassing behavior toward Linville was because of sex. Having failed to show that there is a material issue of fact as to his co-worker's motivation, Linville has, *a fortiori*, failed to establish that Sears discriminated against him based on his gender.

Accordingly, Sears' motion for summary judgment will be granted with respect to Linville's Title VII claim.

4. Supplemental Jurisdiction

Title 28 U.S.C. § 1367(c) provides that "the district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction." At the hearing, the parties stipulated to a voluntary dismissal of Counts III and IV of the Complaint; Linville's attorney represented that those claims would not be brought in any other forum. Pursuant to this stipulation, the Court will dismiss these claims with prejudice. Linville's remaining claim was brought pursuant to the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363.03 (2000). The Court will exercise its supplemental jurisdiction over this claim.

The MHRA contains the same prohibition against discrimination based on sex as Title VII. Like Title VII, the MHRA prohibits same-sex sexual harassment. *Cummings v. Koehnen*, 568 N.W.2d 418, 421 (Minn. 1997). Similarly, the MHRA is not a code of civility for the workplace any more than Title VII. *See Cummings*, 568 N.W.2d at 424. Even conduct that goes so far beyond incivility as to constitute criminal assault, and even if the assault is particularly painful, is not actionable under Title VII–or the MHRA–if it is not because of sex.

That is not to say that there are not differences between the MHRA and Title VII. For example, unlike Title VII, the notion of "discrimination based on sex" in the MHRA is incorporated into the definition of "sexual harassment," as opposed to being a distinct element. *See Cummings*, 568 N.W.2d at 422 ("sexual harassment *is* 'discrimination based on sex'"). However, this conceptual difference between Title VII and the MHRA is of no consequence here. Having decided that Linville's claim under Title VII fails because he has not shown discrimination "based on sex,"

the Court concludes that Linville's claim under the MHRA fails because he can not demonstrate that he was subjected to sexual harassment. Thus, Sears is entitled to summary judgment on Linville's MHRA claim.

ACCORDINGLY, IT IS HEREBY ORDERED THAT:

1. Sears' Motion for Summary Judgment is GRANTED with respect to Counts I and II of the Complaint [Docket No. 21].

2. Pursuant to the parties' stipulation, Counts III and IV of the Complaint is DISMISSED WITH PREJUDICE.

3. Kent Farnham's Motion for Summary Judgment is MOOT, precluding judicial determination [Docket No. 19].

**LET JUDGMENT BE ENTERED ACCORDINGLY**

Dated: 9-4-02

JOAN E. LANCASTER
United States District Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information <u>must</u> be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*